UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN NURSES ASSOCIATION,

Plaintiff,

v.

ASCENSION BORGESS HOSPITAL d/b/a
BORGESS MEDICAL CENTER,

Defendant.
_______________________________/

Case No. 1:26-cv-439

HON. JANE M. BECKERING

**OPINION AND ORDER**

Plaintiff Michigan Nurses Association (the Association) filed a Complaint to Compel Labor Arbitration against Ascension Borgess Hospital d/b/a Borgess Medical Center (Borgess), an "Employer" as identified in the parties' collective bargaining agreements. Now pending before the Court is Borgess' Motion to Dismiss (ECF No. 11). For the following reasons, the Court denies the motion.

## I. BACKGROUND

### A. Factual Allegations

The Association is a labor organization representing employees in industries affecting commerce within the meaning of the Labor Management Relations Act of 1947 (LMRA) (i.e., 29 U.S.C. §§142, 152, and 185), and represents employees within this judicial district, specifically, in Kalamazoo County, Michigan (Compl. [ECF No. 1] ¶ 1). Borgess is an employer engaged in an industry affecting commerce within the meaning of the LMRA (i.e., 29 U.S.C. §§142, 152, and 185) and does business within this judicial district, specifically, in Kalamazoo County, Michigan

(*id.* ¶ 3). Borgess and the Association are parties to a series of successive collective bargaining agreements covering three-year periods between 2013–16 and 2016–19, a two-year period between 2020–22, and the most recent three-year collective bargaining agreement in effect from December 14, 2022 through December 14, 2025 (the "2022–25 CBA") (*id.* ¶¶ 1, 7, & 9, referencing 2022–25 CBA [Ex. 1, ECF No. 1-1]). The parties have also reached a tentative agreement for a new successor multi-year collective bargaining agreement (*id.* ¶ 8). Each CBA establishes the Association's members' wages, hours, and other terms and conditions of employment, including the grievance procedure, while they are employed by Borgess in Kalamazoo County (*id.* ¶ 9).

The Association is the sole and exclusive bargaining representative for the purpose of collective bargaining for all of the Registered Professional Nurses of the Employer included in the bargaining unit as certified by the Michigan Employment Relations Commission as follows:

> All Registered Professional Nurses employed by the Medical Center and classified as full-time and part-time employees (part-time employees are regularly scheduled to work at least sixteen (16) hours or more per week), excluding Directors, Assistant Directors, Supervisors, Clinical Nurse Specialist, Nurse Educators, Clinical Managers, Nurse Practitioners, Infection Control Specialist, Stomal Therapist, Employee Health Outcomes Specialist, members of the Order of the Sisters of St. Joseph, PRN Nurses, RNs employed by the Medical Center or Ascension-affiliated entities on a limited term basis, and other employees.
>
> Graduate nurses and nurses in the Nurse Residency Program shall be included in the bargaining unit. Pay rates for Graduate nurses and nurses in the Nurses Residency Program will be the starting rate of the RN scale, and those nurses will be considered probationary employees.

(2022–25 CBA at 1 ("the Recognition Clause")).

Article 23 of each iteration of the CBA sets forth the agreed-upon four-step Grievance Procedure that, among other things, provides for the resolution of grievances regarding the

interpretation or application of the CBA (*id.* ¶ 11). A grievance is defined by Article 23, Section B as

> a dispute between an associate or the Association and the Medical Center involving the application of one or more provisions of this Agreement or a claimed violation of one or more provisions of this Agreement, presented in a timely manner as defined below. A grievance under this Agreement shall include a statement concerning the section or sections of the Agreement or the past practice which are claimed to have been violated, a description of the alleged violation including but not limited to the date(s) on which the violation is alleged to have occurred, the name(s) of the associate or associates who are grievant(s) (or a description of the group of associates in the case of a Group Grievance), and a brief summary of facts on which it is based and the remedy sought, to the extent it can be determined at the time, written on a standardized form.

(2022–25 CBA at 22; 2020–22 CBA at 20–21; 2016–19 CBA at 20).

If grievances are not resolved through the initial three steps of the procedure, Article 23, Section E, then Step 4 provides that "[a]ny grievance involving the application or interpretation of this Agreement may be submitted to arbitration by the Association, provided a demand to arbitrate is filed within forty-five (45) calendar days of receiving the Step 3 answer" (Compl. ¶ 13). The agreed-upon procedures for arbitration are thereafter explained in the CBA (*id.*, referencing 2022–25 CBA at 22, 2016–19 CBA at 21–22, and 2020–22 CBA at 21–22). Under Article 23, Section E, Step 4(d), the arbitrator's decision shall be final and binding (*id.* ¶ 14, referencing 2022–25 CBA at 24, 2016–19 CBA at 22, and 2020–22 CBA at 22).

In Article 33, Section A, of the 2022–25 CBA, the parties provided that they "intend to wipe the slate clean and agree that any past practices, letters of understanding, and other agreements or understandings that pre-date the effective date of this Agreement are terminated, except for those practices or understandings which are specifically set forth in this Agreement" (2022–25 CBA at 48).

On or about May 16, 2025, the Association learned that Borgess had removed all credited funds from the Retirement Health Reimbursement Accounts (HRAs) of approximately 120 bargaining unit registered nurses, which the Association estimates to be a total loss of over $500,000 (*id.* ¶ 15). On May 16, 2025, the Association filed a grievance, describing the issue as follows:

> Statement of grievance: On or about 5.16.25 [Borgess] informed us of its intent to violate its contractual obligations in the parties' 2016 to 2019 collective bargaining agreement related to the Retirement HRA. This includes, but is not necessarily limited to:
>
> 1. Causing certain employees to prematurely forfeit their HRA balances as a result of Ascension's sale of its membership interest in [Borgess] and;
>
> 2. Requiring those with vested HRA balances to spend their funds within 90 days of the sale.

(Grievance [Ex. 4], ECF No. 1-4 at PageID.213). The grievance references language first added to the parties' 2016–19 CBA relative to the Retirement HRAs accruing to bargaining unit members, language that was continued in the 2020–22 CBA (Compl. ¶¶ 10 & 16, referencing 2016–19 CBA [Ex. 2, ECF No. 1-2] and 2020–22 CBA [Ex. 3, ECF No. 1-3]). The Retirement HRA program provided terms and conditions by which each employee was credited with funds eligible for reimbursement at a later date (*id.* ¶ 17, referencing 2016–19 CBA at 43, and 2020–22 CBA at 45). The Association alleges that Borgess' subsequent erasure of such credits in May 2025 (i.e., during the effective term of the 2022–25 CBA) violated the terms accrued during the course of those prior CBAs (*id.* ¶ 18).

On August 11, 2025, Borgess provided its "Step 3 Grievance Response" to the Association, asserting that the grievance was "without merit" and "not arbitrable" (Compl. ¶ 19; Step 3 Resp. [Ex. 5, ECF No. 1-5]). Through correspondence dated September 2, 2025, the Association notified Borgess of its intention to move the grievance to arbitration (Compl. ¶ 20). On or about December

18, 2025, an agent for Borgess communicated to the Association its refusal to arbitrate the grievance (*id.* ¶ 21).

**B. Procedural Posture**

On February 10, 2026, pursuant to LMRA § 301, 29 U.S.C. §185, the Association filed its Complaint to Compel Labor Arbitration (ECF No. 1). The Association alleges that according to the clear contract language of Article 23 of the 2016–19, 2020–22, and 2022–25 CBAs, Borgess is obligated to arbitrate the Association's grievance (*id.* ¶ 23). The Association alleges that by refusing to cooperate or participate in arbitration of the grievance, Borgess "breached and continues to breach the CBA" (*id.* ¶ 24). In lieu of filing an answer, Borgess filed a Motion to Dismiss (ECF No. 11). The Association filed a response (ECF No. 14), to which Borgess filed a reply (ECF No. 18). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

**II. ANALYSIS**

**A. Motion Standard**

Under Federal Rule of Civil Procedure Rule 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Rule 12(b)(6), in turn, authorizes the court to dismiss a claim for relief in any pleading if it "fail[s] to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,'

… it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A motion to dismiss for lack of arbitrability may be properly decided under Rule 12(b)(6). *See*, *e.g.*, *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC v. LLFlex, LLC*, 852 F. App'x 891, 892–93 (6th Cir. 2021) (analyzing under Rule 12(b)(6) whether the union failed to state a claim upon which the district court could grant relief because the disputed grievance was not arbitrable).

When considering a motion to dismiss for failure to state a claim, the court generally does not consider matters outside the pleadings unless the court treats the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *see also* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). On the other hand, the court may, as the Court does here, consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the

motion to one for summary judgment." *See Gavitt*, 835 F.3d at 640; *see also* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

**B. Discussion**

The parties agree that the issue of arbitrability is for this Court to decide (ECF No. 12 at PageID.238; ECF No. 15 at PageID.257). In support of its position that arbitration is foreclosed, Borgess argues that no arbitration may be brought under the 2022–25 CBA except for arbitration requiring application of a provision in that CBA or an alleged violation of that CBA (ECF No. 12 at PageID.239–241). Borgess argues that the dispute at bar about Retirement HRA credits involves "language that existed in prior CBAs," not application or interpretation of the 2022–25 CBA (*id.*). Borgess asserts that its position is reinforced by the fact that the 2022–25 CBA "wiped the slate clean" and "terminated" all prior agreements (*id.* at PageID.242–244, quoting Art. 33, § A, 2022–25 CBA, ECF No. 1-1 at PageID.57).

In response, the Association argues that Borgess overlooks federal decisions allowing for post-expiration arbitration of rights that accrued during prior CBAs (ECF No. 15 at PageID.261–270). The Association asserts that "[j]ust because HRA credits no longer accrue[] as part of [the 2022–25] CBA does not mean the credits previously accrued under the [2016–19 and 2020–22 CBAs] somehow evaporated" (*id.* at PageID.265).

Borgess' argument does not entitle it to dismissal.

Courts "may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). Courts begin with the plain text of the agreement, and if its meaning is unambiguous, then the analysis ends. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

If the text is ambiguous, then "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "[N]ational labor policy favors arbitration." *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277–78 (6th Cir. 2007). "[A]rbitrators, more so than the courts, possess the proper experience and expertise to resolve labor disputes[.]" *Id.* (citation omitted).

The parties' dispute at bar over forfeited Retirement HRA credits concerns the alleged violation of the expired 2016–19 and 2020–22 CBAs, i.e., a post-expiration grievance. In *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243 (1977), the Supreme Court considered a similar post-expiration grievance, a severance pay claim. The employer argued that because severance pay was "a creation of the collective-bargaining agreement, its substantive obligation to provide such benefits terminated with the Union's unilateral cancellation of the contract." *Id.* at 249. The Supreme Court acknowledged that the duty to arbitrate is a creature of the collective bargaining agreement and that a party cannot be compelled to arbitrate any matter absent a contractual obligation to do so. *Id.* at 250–51. The Court held that "[a]dherence to these principles, however, does not require us to hold that termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract." *Id.* at 251. The Court reasoned the following:

> [B]oth the Union's claim for severance pay and Nolde's refusal to pay the same are based on their differing perceptions of a provision of the expired collective-bargaining agreement. The parties may have intended, as Nolde maintained, that any substantive claim to severance pay must surface, if at all, during the contract's term. However, there is also 'no reason why parties could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had expired.' *John Wiley & Sons v. Livingston*, 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964). Of course, in determining the arbitrability of the dispute, the merits of the underlying claim for severance pay are not before us. However, it is clear that, whatever the outcome, the resolution of that

> claim hinges on the interpretation ultimately given the contract clause providing for severance pay. The dispute therefore, although arising after the expiration of the collective bargaining contract, clearly arises under that contract.

430 U.S. at 249 (footnote omitted).

Subsequently, in *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 205–06 (1991), the Supreme Court indicated that it "agree[d] with the approach of the [National Labor Relations] Board and those courts which have interpreted *Nolde Brothers* to apply only where a dispute has its real source in the contract." The Supreme Court observed that "*Nolde Brothers* does not announce a rule that post-expiration grievances concerning terms and conditions of employment remain arbitrable." *Id.* Rather, the *Nolde Brothers* presumption is limited to disputes arising under the contract, with a post-expiration grievance arising under the contract "only where [1] it involves facts and occurrences that arose before expiration, [2] where an action taken after expiration infringes a right that accrued or vested under the agreement, or [3] where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id.*

In applying *Nolde Brothers*, the Sixth Circuit has held that if a court determines, pursuant to one of the three *Litton* exceptions, that a grievance arose under an expired agreement, then the next step is determining whether "the parties negated, either expressly or by clear implication, the presumption that the arbitration clause of the collective bargaining agreement extends beyond the expiration of the Old Agreement." *S. Cent. Power Co. v. Int'l Bhd. of Elec. Workers, Loc. Union 2359*, 186 F.3d 733, 741 (6th Cir. 1999) (applying *Nolde*, 430 U.S. at 255).

For example, in *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industries & Service Workers International Union v. American Standard Corp.*, 487 F. App'x 234 (6th Cir. 2012), the Sixth Circuit held that a union's grievance regarding a separation pay provision

in an expired CBA arose during that contract and was subject to arbitration. The parties had a CBA that contained a formula for accruing separation pay, whereby employees received different amounts based on how many years they worked under a table incorporated into the CBA. Ultimately finding the dispute arbitrable, the Sixth Circuit reasoned that "the fact that a collective bargaining agreement has expired does not mean that arbitration can no longer occur under it." *Id.* at 235–36 (citing, in pertinent part, *Nolde Bros.*, 430 U.S. at 250–52). The Sixth Circuit found that "[a]ttributes that suggest a right has accrued include factors that remain constant, that cannot improve or atrophy, and that can be measured on a universal scale." *Id.* at 237. The Sixth Circuit further explained that the determination of the right is "objectively quantifiable based on a specific formula that considers only the number of years of continuous service the employee has had with American Standard," pointing out that the length of employment is a "universal scale that remains constant across all employees." *Id.* at 238.

Here, the Association plausibly alleges that its members accrued rights to Retirement HRA credits under the provisions within the 2016–19 and 2020–22 CBAs. The Association plausibly alleges that like the severance pay at issue in *Nolde Brothers*, which was provided as deferred compensation for work during the expired CBAs, Retirement HRA credits were accrued in this case for work that was conducted during the expired 2016–19 and 2020–22 CBAs. Specifically, credits were given for work that was conducted during those CBAs, at the formulaic rate of a $1,200 credit for each year in which an employee worked 1,000 hours or more (2016–19 CBA at 45; 2020–22 CBA at 43). Consistent with its statement of grievance, the Association plausibly alleges that the amounts accrued are objectively quantifiable, universal, and constant across all employees, i.e., that its post-expiration dispute is arbitrable.

Borgess' reliance on the wipe-the-slate-clean language in Article 33, Section A of the 2022–25 CBA does not compel a different conclusion. This language does not ameliorate, either expressly or by clear implication, the presumption that the arbitration clauses of the 2016–19 and 2020–22 CBAs extend beyond the expiration of these Agreements.

Borgess' argument contrasting "accrued" and "vested" rights also does not compel a different conclusion. In *American Standard*, the Sixth Circuit pointed out that *Litton* requires only that the right at issue either accrue *or* vest under the agreement. 487 F. App'x at 238. *See Litton*, 501 U.S. at 206 ("Rights which accrued or vested under the [expired] agreement will, as a general rule, survive termination of the agreement."). Indeed, the Sixth Circuit acknowledged that "[i]t is possible that the severance right here did not vest under the CBA and that the employees are not entitled to that benefit, but that is an issue of contract interpretation that the parties agreed to submit to arbitration." *American Std.*, 487 F. App'x at 238. The same conclusion is apt here.

In sum, under binding Supreme Court precedent, the Association plausibly states a claim upon which relief can be granted.

## III. CONCLUSION

Accordingly:

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 11) is DENIED.

**IT IS FURTHER ORDERED** that Defendant shall, within 14 days of entry of this Opinion and Order, file its Answer to Plaintiff's Complaint to Compel Labor Arbitration (ECF No. 1).

Dated: September 2, 2026

/s/ Jane M. Beckering
JANE M. BECKERING
United States District Judge